GEORGE TARRANT, BY HIS NEXT FRIEND, MRS. W. H. TARRANT v. PEPSI-COLA BOTTLING COMPANY AND CHRISTIAN-HARWARD FURNITURE COMPANY, TRADING AS ROGERS FURNITURE COMPANY.

(Filed 5 June, 1942.)

1. Trial § 22b—

Upon motion to nonsuit, defendant's evidence will not be considered except to explain or clarify plaintiff's evidence when it is not in conflict therewith. C. S., 567.

2. Automobiles § 9e—

A bicycle is a vehicle and is subject to provisions of the Motor Vehicle Act except those which by their nature can have no application. Public Laws 1937, ch. 407, sec. 2 (ff), as amended by Public Laws 1939, ch. 275, sec. 1 (b).

3. Automobiles § 8—

The operator of a motor vehicle, even in the absence of statutory requirement, is under duty to exercise ordinary care under the circumstances, which imports keeping his vehicle under control and the maintenance of reasonable vigilance and due regard for the exigencies of traffic.

**4. Same—**

The duty of the operators of motor vehicles to use due care under the circumstances is mutual, and each may assume that others will comply with this obligation.

**5. Automobiles § 11—**

An operator of a vehicle overtaking and passing another vehicle traveling in the same direction must keep at least two feet to the left of such other vehicle in passing, and not drive to the right again until he is safely clear of the vehicle passed. Public Laws 1937, ch. 407, sec. 111 (a).

**6. Automobiles §§ 8, 11—**

An operator of a parked truck must anticipate vehicles passing two feet to its left, and is negligent in opening the door of the truck out into the lane for passing traffic without ascertaining that such action will not affect other vehicles.

**7. Automobiles § 9c—**

The violation of the statutory requirements in overtaking and passing vehicles proceeding in the same direction, in following other vehicles more closely than is reasonable and prudent, or in driving at a greater rate of speed than is reasonable and prudent under the circumstances, is negligence *per se*. Public Laws 1937, ch. 407, secs. 111 (a), 114 (a), 103 (a).

**8. Automobiles § 9b—**

An operator of a motor vehicle shall not follow another vehicle traveling in the same direction more closely than is reasonable and prudent under the circumstances and conditions of traffic. Public Laws 1937, ch. 407, sec. 114 (a).

**9. Automobiles § 12a—**

The driver of a vehicle upon a highway shall not travel at a greater rate of speed than is reasonable and prudent under the circumstances. Public Laws 1937, ch. 407, sec. 103 (a).

**10. Automobiles §§ 18c, 18d—In this action by cyclist, issues of concurrent negligence of defendants and contributory negligence of plaintiff held for jury.**

Plaintiff's evidence tended to show that he was riding his bicycle on the right side of the street, that as he was about to pass a parked truck some fifty to eighty feet before reaching a street intersection, and while slowing up for a traffic light at the intersection, the left door of the truck was suddenly opened in his path of travel, that to avoid striking it he swerved to his left and was struck by the right front fender of a truck which was traveling in the same direction at a greater speed and overtaking him. There was evidence that the door of the truck swung open two and one-half feet beyond the body of the truck, and plaintiff testified that when he swerved to the left there was no vehicle directly to his left. *Held:* The evidence is sufficient to be submitted to the jury on the question of the concurrent negligence of the drivers of both trucks, the one in suddenly opening the door of his truck in the path of plaintiff's travel, and of the other in failing to keep a reasonable careful lookout for plaintiff and following plaintiff's bicycle more closely than was reasonable and proper under the circumstances and in driving at a greater rate of speed

than was reasonable and prudent under the conditions then existing, and *held further* the evidence fails to disclose contributory negligence as a matter of law on the part of the plaintiff.

**11. Automobiles §§ 9c, 12a—**

While speed in excess of statutory maximums set forth in subsection (b), sec. 103, ch. 407, Public Laws 1937, is only *prima facie* evidence that the speed is not reasonable or prudent, the violation of subsection (a) of said section, prescribing that a vehicle shall not be driven at a greater rate of speed than is reasonable and prudent under the circumstances, is negligence *per se*.

APPEAL by defendants from *Williams, J.,* at October Civil Term, 1941, of DURHAM.

Civil action to recover for personal injury allegedly sustained as result of joint and concurrent actionable negligence of defendants.

In the trial court these facts appeared:

On morning of 8 May, 1939, about 8:30 o'clock, plaintiff, who was then 18 years of age, was injured when the bicycle, which he was riding on trip to deliver a small package for King's Drug Store, by whom he was employed, came into collision with a truck of defendant, Christian-Harward Furniture Company, trading as Rogers Furniture Company, driven by its employee, George E. Parrish, in the course of his employment, as both were traveling west on Chapel Hill Street at a point east of the intersection of said street and Morris Street at, and east of Five Points and in the block between Morris Street and Roney Street in the city of Durham, North Carolina.

Chapel Hill Street runs in general direction of east and west, is hard-surfaced, and is forty feet wide. Morris Street runs in general north and south course. At the intersection of these streets traffic is controlled by stop lights located in center of Five Points.

At the time of said collision motor vehicles were parked on both north and south sides of Chapel Hill Street in said block. Among those parked on the north side, and headed west, was a truck of defendant, Pepsi-Cola Bottling Company, in charge of its employee, R. A. George, in the course of his employment. This truck, according to various estimates, was from ten to seventeen feet long and from five feet to eighty inches wide. Its cab was about two feet narrower than the main body. Its location was parallel with, and about three or four inches from the curbing at a point variously estimated to be fifty to eighty feet from Morris Street.

Plaintiff, as a witness, testified, briefly stated, as follows: That when on this morning he entered Chapel Hill Street from an alley he did not see any cars—though there was "some one down the street west," and "some activity" to his right, and east, down toward the post office; that he crossed over to the north side of the street and went down on his right

side; that he had both hands on the handlebars and both feet on the pedals; that the handlebars of his bicycle were about twelve inches wide and V-shaped; that after he passed the entrance to Roney Street, and had "got middleways of the block," he saw the Pepsi-Cola truck and another car parked on the right, or north side of the street; that the door of the truck was closed, and he did not see anybody in the cab, but that as he was passing two or three feet from, and to the left side of this truck, at a speed of 8 to 10 miles per hour, the driver of the truck suddenly opened the left door of the cab seven or eight feet in front of plaintiff; that in his estimate "there were 2½ feet of it jutting out from the body of the truck"; that in order to avoid running into the opened door, plaintiff cut his bicycle "suddenly" though not "directly" to his left, toward the center of the street; that he did not collide with the opened door but just as soon as he started to turn there, the front—the right front fender, of the Furniture Company's truck, also traveling west along Chapel Hill Street, hit the rear end of his bicycle and threw him to the ground under the bicycle—smashing it and injuring his leg; that he, plaintiff, did not see the Furniture Company's truck before it hit him; that he does not know how much space there was between the Pepsi-Cola truck and the Furniture Company's truck; that the Pepsi-Cola truck, the space between it and his bicycle and the width of his bicycle would not occupy more than ten feet of the space of the street on the north side; that while as he came down the street he had seen two or three cars some distance ahead, traveling west and facing the stop light, there was no motor vehicle to his left at the time he turned to avoid running into the door of the Pepsi-Cola truck; that while as to those cars he could not tell whether they were moving or standing still, there were none parked there waiting for stop light; that he had passed no vehicle except the Pepsi-Cola truck and was not at the time of passing it zigzagging his bicycle down a narrow lane formed by a line of automobiles; that he did not run into the side of the Furniture Company's truck; but, that if the door of the Pepsi-Cola truck had not been thrown open in his face, he would have kept a straight course, and "would never have been hit."

Defendants, each reserving exception to denial of their respective motions for judgment as in case of nonsuit, offered evidence.

R. A. George, as witness for Pepsi-Cola Bottling Company, testified in substance: That the collision between the bicycle of plaintiff and the Furniture Company's truck occurred not over three or four seconds after he had stopped the Pepsi-Cola truck and parked 75 to 80 feet from intersection of Chapel Hill and Morris Streets, and cut off his motor; that it occurred while he was still in the seat, looking ahead through the windshield, and before the door was opened; that it occurred about eight or ten feet in front of him when the Furniture Company truck overtook

plaintiff and had passed him about half way its length; that there the handlebars of the bicycle caught about the center of the truck, and the rear wheels of the truck ran over it; that the truck stopped after it hit him—"it run 12 or 14 feet"; that just before the plaintiff hit the truck, he was going down the street in a diagonal course, not direct, just a little to the left; that he saw the bicycle as it passed the front wheels of the Pepsi-Cola truck 2 or 3 feet to the left, he would estimate, and at that moment there was nothing, no other vehicle, to the left of the bicycle; that there was just a short distance between it and the Furniture Company's truck, the latter being "just slightly behind the bicycle"; that the bicycle was ahead of the truck, but not directly in front of it; that he did not see or hear any signal of the Furniture Company's truck; that the truck was traveling with more speed than the bicycle; that though there were automobiles down there in front of the truck, going in direction of stop light, "this truck was not jammed up against the car it was following"—there was a space between the truck and the next vehicle; and "all of the vehicles were moving"; that the bicycle was in the space north of the truck, and north of "that line of traffic."

George E. Parrish, as witness for defendant Furniture Company, testified substantially as follows: That going west on Chapel Hill Street, just as he passed Roney Street, 90 or 100 feet back of where the accident happened, he saw plaintiff's bicycle going in same direction, 10 or 15 feet in front and to the right; that his truck was traveling at rate of 10 to 15 miles per hour—a little faster than the bicycle, and overtook it in about 30 feet; that "having last seen the bicycle about sixty feet down the street going along behind the body of the truck," he proceeded on his way towards Five Points, and just as he got even with the Pepsi-Cola truck he heard "this noise, a rattling noise on the pavement," and stopped and went back to plaintiff, who was lying 2 or 3 "might be 3 to 8 feet" ahead of the left fender of the Pepsi-Cola truck; that plaintiff said "that he didn't see how it could be my fault; that the Pepsi-Cola truck was opening the door; that he dodged . . . and ran into the side of my truck"; that the distance between the right side of his truck and that of Pepsi-Cola truck was somewhere between 4½ and 5 feet; that his truck was not over a foot and a half from center line of street; that at time of the accident he was following in the line of traffic on way to the intersection, and had begun to slow down for the stop light, slowing up behind cars which were traveling slowly; that at least one car stopped but he thinks the light was in the act of changing from green to red at time he was slowing up behind the cars.

Then on cross-examination this witness further testified: "When I first saw George Tarrant he was traveling in a line of traffic. I was catching up with the line of traffic. I was not far behind . . . The bicycle was

somewhere in between me and the traffic . . . The bicycle was almost down to where the cars were when I was catching up with it." Then on being asked this question, "What was between you and the bicycle up to the time you got opposite the truck of the Pepsi-Cola Bottling Company?" he answered, "The line of traffic that I was following and the bicycle was almost together . . ." Then to this question, "The line of traffic was in front of you, wasn't it?" he answered, "Yes, the line of traffic was in front of me and the bicycle was somewhere along in there with the traffic . . ." and continuing, he said "The bicycle was with the line of traffic . . . the boy was riding down in front of me and along in a straight direction on his bicycle . . . he was traveling from 8 to 10 miles per hour and I was traveling anywhere from 10 to 15 miles per hour; my car ran 8 to 10 feet after the impact. I did not run into any car standing there. It was some feet back of the stopped cars. The cars in front of me at the time the impact took place were somewhere about 10 feet. It could have been a little more or a little less." And, continuing, on redirect examination, the witness said: "I was traveling at rate of 10 or 15 miles back up the street and I had applied my brakes to slow up behind the cars and I probably come to about 8 or 10 miles per hour speed at the time."

Defendant Furniture Company also introduced in evidence provisions of the City Code of the city of Durham pertaining to "Go," "Caution," and "Stop" traffic control signal, applicable to all vehicles, including bicycles, and permitting daytime parking on Chapel Hill Street.

Plaintiff in reply denied statement attributed to him by Parrish, except so much as related to the opening of door.

The acts of negligence alleged by plaintiff are substantially these:

1. That the agent, servant, and employee of defendant, Pepsi-Cola Bottling Company (a) negligently failed to keep a proper lookout for persons who were properly using Chapel Hill Street, and (b) negligently opened the door of the cab of said truck at a time when plaintiff was so near to said door that he was forced either to run into it or to swerve to the left of it in order to prevent colliding with it.

2. That the driver of the truck of defendant Christian-Harward Furniture Company was negligent in that he (a) failed to keep a proper distance between the truck driven by him and the bicycle on which plaintiff was riding, (b) failed to keep a proper lookout for the plaintiff as he was riding his bicycle ahead of the truck, and (c) was operating same at negligent rate of speed, under the circumstances.

3. That the said acts of negligence of each of defendants combined and concurred as the proximate cause of injury to plaintiff.

These issues were submitted and answered by the jury as indicated:

"1. Was the plaintiff injured by the negligence of the Pepsi-Cola Bottling Company, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff injured by the negligence of Christian-Harward Furniture Company, as alleged in the complaint? Answer: 'Yes.'

"3. Did the plaintiff, by his own negligence, contribute to and bring about his injury? Answer: 'No.'

"4. What damages, if any, is the plaintiff entitled to recover? Answer: '$3,000.00.' "

From judgment in accordance therewith, each defendant appeals to Supreme Court and assigns error.

*Fuller, Reade, Umstead & Fuller for plaintiff, appellee.*

*R. M. Gantt for defendant, appellant, Pepsi-Cola Bottling Company.*

*Hedrick & Hall and Allston Stubbs for defendant, appellant, Christian-Harward Furniture Company.*

WINBORNE, J. The challenge of each defendant to the judgment below is directed (1) to the ruling of court in refusing to grant motion made at close of all the evidence for judgment as in case of nonsuit, C. S., 567, and (2) to portions of the charge.

In considering the first, "defendant's evidence unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with the plaintiff's evidence, it may be used to explain or make clear that which has been offered by the plaintiff." *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598, and cases recently assembled in *Jeffries v. Powell, post,* 415.

When the evidence in the present record is so considered and taken in the light most favorable to plaintiff, we are of opinion that it is sufficient to take the case to the jury.

At the outset it is pertinent to note that for the purposes of the Motor Vehicle Act, effective in this State at the time of the accident in question, "bicycles" shall be deemed vehicles, and every rider of a bicycle upon a highway shall be subject to the provisions of the Act applicable to the driver of a vehicle, except those which by their nature can have no application. Public Laws 1937, chapter 407, section 2 (ff), as amended by Public Laws 1939, chapter 275, section 1 (b).

It is a general rule of law, even in the absence of statutory requirement, that the operator of a motor vehicle using the highways must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty, it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. This duty requires that the operator be reasonably vigilant, and that he must anticipate and expect the presence of others. And, as between operators

so using the highways, the duty of care is mutual, and each may assume that others on the highway will comply with this obligation. 5 Am. Jur., Automobiles, sections 165, 166, 167, 168, and 169. See, also, *Murray v. R. R.,* 218 N. C., 392, 11 S. E. (2d), 326, and *Reeves v. Staley,* 220 N. C., 573, 18 S. E. (2d), 239.

Furthermore, the statute relating to operation of vehicles and rules of the road, Public Laws 1937, chapter 407, as amended, provides "that the driver of any such vehicle overtaking another vehicle proceeding in the same direction shall pass at least two feet to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle." Section 111, subsection (a).

In keeping with these principles and with this statute, the driver of the truck of the defendant Bottling Company was charged (1) with the duty of anticipating and expecting others to be using Chapel Hill Street, and (2) with knowledge that vehicles might lawfully pass at distance of not less than two feet from the left side of the truck. Hence, before opening the left door into the traveled portion of the street, it was his duty to exercise ordinary care to see that the door could be opened in reasonable safety to approaching traffic. 2 Blashfield Cyc. of Automobile Law and Practice, p. 617, section 1593, citing *Seiler v. Philadelphia Rapid Transit Co.* (Pa.), 169 Atl., 422.

The facts in the *Seiler case, supra,* are very similar to factual situation here. There the automobile door on the left side toward "the cartway" was open and the driver had one foot on the running board preparing to alight when a taxicab headed in the same direction struck the edge of the partly opened door and broke it from its hinges. The owner of the automobile sued to recover damages therefor. The Superior Court of Pennsylvania, on appeal thereto from municipal court, in denying recovery, said: "There was room on the street for the taxicab driver to have gone farther to the left, but he was on his right side of the cartway, and was not bound to anticipate the sudden opening of the car door by Seiler without taking precaution to look or listen before so doing. It was that unexpected action that caused the accident. Negligence must not be imputed to a failure to avoid this sudden opening of the door. The driver of the taxicab was in that portion of the street where he had a right to be, proceeding properly, and, undoubtedly, he would have passed the car without a mishap but for Seiler's unforeseen action . . . When one is about to alight from an automobile on the cartway side of the street, a duty is imposed upon him to exercise a reasonable and ordinary degree of care by looking or listening for approaching traffic." 2 Blashfield Cyc. of Automobile Law and Practice, section 1593.

The testimony of the plaintiff, in present case, if believed, tends to show that he was riding his bicycle at a moderate rate of speed, two to

three feet to the left of the parked truck, where he had a right to ride, and that he was keeping proper lookout when the door of the truck suddenly opened within seven or eight feet in front of him, and at a time when he could not stop his bicycle. This was sufficient as against defendant Bottling Company to take the case to the jury.

Now, as regards the defendant Furniture Company, not only the principles and statute above stated, but other provisions of the Motor Vehicle Law, Public Laws 1937, chapter 407, as amended, are pertinent: It is provided that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicle and the traffic upon and condition of the highway," section 114, subsection (a).

It is also provided that "no person shall drive a vehicle on a highway at a greater rate of speed than is reasonable and prudent under conditions then existing." Section 103, subsection (a).

A violation of either of these statutory provisions or of the provisions of section 111, subsection (a), above quoted, would be negligence *per se,* and if injury proximately result therefrom, it would be actionable. *Williams v. Woodward,* 218 N. C., 305, 10 S. E. (2d), 913; *Murray v. R. R., supra; Reeves v. Staley, supra.*

Applying the above principles and statutory provisions to the evidence favorable to plaintiff in the present case, and bearing in mind that a bicycle is a vehicle within the language and meaning of the statute, it was the duty of the driver of the truck of defendant Furniture Company, in the exercise of ordinary care (1) to keep a reasonably careful lookout for plaintiff as he was riding his bicycle, a vehicle, along Chapel Hill Street; (2) to follow the bicycle no more closely than was reasonable and prudent, with regard for the safety of plaintiff, and with due regard to the speed of the bicycle and the traffic and condition then on the street; and (3) to drive his truck at no greater rate of speed than was reasonable and prudent under conditions then existing.

And the evidence, taken in light most favorable to plaintiff, is susceptible of inference that the driver of Furniture Company's truck failed to exercise ordinary care in each of these respects, and it is sufficient to require the submission of second issue.

It is contended by defendants that plaintiff was guilty of contributory negligence in these respects: (1) That he was violating the statute in passing on the right side of a line of moving traffic. As to this, there is evidence that there was no vehicle to his left when he turned to avoid striking the door of the parked truck. (2) That he failed to bring his bicycle to a stop in approaching the stop light at intersection of Chapel Hill and Morris Streets in violation of ordinance of the city of Durham. As to this, all the evidence tends to show that the accident occurred while

he was passing or just after he passed the parked truck of Bottling Company, and that that was parked from fifty to eighty feet, as variously estimated, from the intersection. It is apparent, therefore, that plaintiff had not reached a point where he was called upon to stop. Furthermore, his testimony is that the truck struck the rear of his bicycle before he caught up with traffic ahead, and that he did not run into the side of the truck. (3) That plaintiff suddenly changed the course of his bicycle without giving any signal of his intention so to do. In this respect, a bicycle, being a vehicle in the language and within the meaning of the statute, plaintiff had the right to assume and to act on the assumption that the operator of a vehicle following him, if any, would observe his statutory duty to exercise ordinary care as to keeping reasonable lookout, as to proper distance between such vehicle and the bicycle, and as to reasonable and prudent rate of speed. Moreover, he was acting in an emergency. Manifestly, there is no error in refusing to hold as a matter of law that plaintiff was guilty of contributory negligence.

Defendants except to that portion of the charge wherein the court instructed the jury "that if you find by the greater weight of the evidence, as I have defined that term, that the defendant, Christian-Harward Furniture Company, was operating its truck at a greater rate of speed than was reasonable and prudent under the circumstances then existing, that would be negligence per se . . ."

This instruction is based upon subsection (a) of section 103 of the Motor Vehicle Act, and not upon subsection (b) of that section. It is in the latter subsection that it is provided that any speed in excess of lawful speed limits therein specifically prescribed "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." This rule of evidence is confined to violations of the speed limits there prescribed. Hence, the charge as given is in keeping with well settled rule in this State.

Consideration of the other exceptive assignments to portions of the charge in the light of the theory of the trial fails to reveal prejudicial error. The charge is in substantial compliance with legal requirements. Hence, no one of the exceptions thereto is cause for disturbing the judgment on the verdict of the jury.

The judgment is

Affirmed.