[Civ. No. 28437.   Second Dist., Div. One.   Apr. 1, 1965.]

RAY BERNARD CORRIGAN, Plaintiff, Cross-defendant and Respondent, v. RITA CORRIGAN STILTZ, Defendant, Cross-complainant and Appellant.

Cooper, Boller & Leib and Harvey G. Cooper for Defendant and Appellant.

Jack Altman and Norman Schwartz for Plaintiff and Respondent.

LILLIE, J.—The parties to this appeal (referred to hereinafter as "Ray" and "Rita") were formerly husband and wife. The decree terminating their marriage awarded to each of them as undivided interest as tenants in common in real property known as the Corriganville Ranch, as well as personalty and appurtenances thereon situated. In 1955 the ranch was leased by Ray and Rita to Outdoor Amusements, Inc., whose subsequent operation of the property did not prosper. In 1957 Ray filed suit against the corporation for breach of various covenants—Rita did not join as a party plaintiff and was accordingly made a party defendant. The lawsuit was thereafter settled by compromise, and Ray received stock representing a controlling interest in the corporation for which he paid $20,000. Upon dismissal of Ray's action, he took over the management of the ranch in the name of the corporation. He was successful in the enterprise. In December of 1962 Ray instituted an action to have the land partitioned, praying among other things that the property be sold and the proceeds divided between Rita and himself according to their interests. An answer and cross-complaint were filed by Rita. The cross-complaint, in five counts, asked that the lease to Outdoor Amusements, Inc., be canceled, for an adjudication that Ray

has been and is the trustee for Rita as to one-half of all the company's assets acquired by him, for an accounting, damages and other relief. The trial court found against Rita on her cross-complaint, further finding that the property should be partitioned and sold under stated conditions. There appears to be no dispute as to the determination below that the land (including the lease) be sold;[1] what is challenged on this appeal is the correctness of the conclusion that Rita take nothing by reason of her cross-complaint.

The trial court's denial of the relief sought by Rita, as cross-complainant, is grounded upon affirmative defenses interposed by Ray in his answer raising the bar of certain statutes of limitation and laches. In this connection, the following supportive facts were found: On or about May 1, 1958, Ray acquired 80 per cent of the common stock and 100 per cent of the preferred stock of Outdoor Amusements, Inc.; immediately thereafter he commenced making rent payments by checks which he signed and subsequently had delivered to Rita; between May 1, 1958, and March 14, 1962, Ray was at all times operating Outdoor Amusements, Inc., and the incidental operating of the ranch with Rita's knowledge, such knowledge having been acquired immediately after the acquisition of the stock above referred to; Rita was served with legal papers indicating that Ray desired to acquire ownership of the ranch by canceling the lease with Outdoor Amusements, Inc., and she refused to become a party to the action and was named as a defendant in said proceeding; Ray's action was filed prior to May 1, 1958, no further activity was thereafter had with respect thereto, and Rita had knowledge of the fact that the matter was never brought to trial; Ray paid $20,000 for his stock interest in the company, and at no time did Rita offer to share in the purchase of said stock by offering $10,000 or any sum for the acquisition of any interest therein; the value of the property increased "tremendously" thereafter, due in part to Ray's efforts; at all times since May 1958, Rita was represented by able counsel and had full knowledge, directly or indirectly, of Ray's operation of the ranch; Rita had knowledge that Ray was risking capital but made no effort to participate in that risk until it became evident that no risk was involved, whereupon "she made her first move toward acquisition of a share in Outdoor Amusements, Inc."

---

[1]Rita does not assign error to the conclusion of law, drawn from an appropriate finding of fact, "That the property described in the complaint be partitioned in accordance with the stipulation of the parties and in accordance with the interlocutory judgment hereinbefore signed."

■ We first dispose of the contention that the findings of fact and conclusions of law are uncertain, ambiguous and contradictory. In this regard, appellant complains that she is confused as to just which issues were decided in her favor and which in favor of Ray. Upon receipt of the proposed findings Rita filed extensive objections thereto; she did not, however, request special findings. In *Ruppert* v. *Jackson*, 212 Cal. App.2d 678, 682 [28 Cal.Rptr. 467], after referring to the occasional complaints of litigants and lawyers that nobody knew what the judge's decision was on the facts, the court pointed out that the 1959 amendments to section 632 and 634, Code of Civil Procedure, were enacted to meet such complaints and compel trial judges to make findings on all material issues. The case holds that unless a party requests special findings (Code Civ. Proc., § 634), a judgment will not be set aside because of the failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. We cannot, therefore, resolve any asserted ambiguity in favor of appellant as was done in *Calloway* v. *Downie*, 195 Cal.App.2d 348, 353 [15 Cal.Rptr. 747], pursuant to the provisions of section 634, *supra*. The above principles are particularly applicable here where several causes of action resting upon several theories all involve the same facts; it became incumbent on appellant not only to file objections to the proposed findings but to request special findings on said facts, failing which her objection thereto is waived. (*Ruppert* v. *Jackson, supra*, p. 684.) Too, since appellant has elected to come up on a limited record of the proceedings below—there is no transcript of the evidence taken at the trial—she is in effect prosecuting this appeal on a clerk's transcript.[2] ■ "It is elementary and fundamental that

---

[2] While it appears from the record that originally appellant's counsel, in his notice to prepare clerk's transcript, requested a reporter's transcript as part of the record on appeal, it is obvious from the court reporter's letter to him of January 19, 1965—10½ months later—advising him that upon payment of $165 he would prepare the reporter's transcript, that appellant did not provide the fees to be paid the reporter for the transcript under Rules on Appeal, rule 4(c). Nor was the reporter's transcript filed within the time required under rule 4(d).

Five months after the filing of appellant's opening brief (August 17, 1964), in which appellant made no reference to line or page number of the reporter's transcript in setting out the evidence, as required under rule 15(a), and one month after the filing of respondent's brief (December 15, 1964), which was written in reliance on the record which contained no reporter's transcript, appellant's counsel on January 18, 1965, wrote the county clerk asking that the reporter's transcript be filed. On January 19, 1965, appellant's counsel was advised by letter

on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment.'' (*Kompf* v. *Morrison,* 73 Cal.App.2d 284, 286 [166 P.2d 350].) Additionally, it is Hornbook law that findings must receive such construction as will uphold rather than defeat the judgment. With that final observation, we pass to the next assignment of error.

As noted above, the trial court found against Rita's cross-demands for the reason that they were not seasonably asserted; she now complains that it was reversible error so to hold. She argues that certain of the five counts in her cross-complaint are actions at law to which the equitable defense of laches is not available (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 752 [192 P.2d 935]); as to the actions at law contained in her pleading, she further asserts, the particular code sections specified by Ray as barring the respective claims do not apply. The trial court drew the conclusion of law that, in addition to laches, Rita's demands were barred by section 337, subdivision 1 (four years), section 338, subdivision 4 (three years), and section 343 (four years), Code of Civil Procedure, all of which were pleaded by Ray according to the method prescribed in section 458 of the same code. ▮ The gist of Rita's argument is not so much that certain statutes of limitation might govern the facts found, but that Ray selected the wrong code section or subdivision thereof; for example, she says that subdivision 4 instead of subdivision 3, section 338, was pleaded in bar of her second cause of action which is

---

from the court reporter that he would prepare the transcript upon receipt of $165. However, appellant took no action in this regard and, on the record as it then stood, filed appellant's reply brief on March 12, 1965. Finally, on March 17, 1965, six days before the hearing in this court, March 23, 1965, the county clerk sought to file the reporter's transcript without leave, the time for filing the same having expired. (Rule 45(b), (c).) The transcript was rejected for filing by this court and returned to the county clerk.

It is clear that appellant at all times knew that no reporter's transcript had been filed for she neither paid the fee to the reporter under rule 4(c), caused the same to be filed within the proper time under rule 4(d), nor made appropriate reference to the transcript in setting out the evidence in her brief. (Rule 15(a).) In reliance upon the record which contained no reporter's transcript, respondent filed his brief, and appellant thereafter filed her closing brief on the same record. Under the circumstances and in light of the certification by the county clerk of the record on appeal, we presume that it includes all matters material to the determination of the points on appeal. (Rule 52.)

said to be one for conversion. If such is the fact, however, it was incumbent on Rita to object to the insufficiency of the sections pleaded either by demurrer to the answer or by timely objection at the trial. (*Davenport* v. *Stratton,* 24 Cal.2d 232, 248 [149 P.2d 4].) There is no showing here that either such step was taken. There does seem to have been a desultory effort in that regard by Rita's present counsel at the time of argument on his motion for a new trial—the limited reporter's transcript on appeal includes such proceedings; but counsel did not formally urge the objections now raised, contenting himself with inquiry of the court "as to just which statute you are relying on with reference to the statute of limitation. . . ." Of further significance is the fact that the time period in question encompassed some four and one-half years—from May 1, 1958, to December 26, 1962, the date that Ray's partition suit was filed. With one exception, to be presently discussed, the statutes said to govern provide for limitation periods of three or four years; and Rita's claims would thus still remain stale.

A more serious matter is the complaint that no statute of limitation was pleaded in bar of Rita's third cause of action. If such count be construed as an action at law, the failure to plead any statute is fatal to Ray's defense in that regard. (*Minton* v. *Cavaney,* 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) Captioned "TERMINATION OF LEASE BY MERGER WITH FEE SIMPLE INTEREST," it is assertedly an action to quiet title possessing the essential characteristics of the old legal action of ejectment. It was held in *Thomson* v. *Thomson,* 7 Cal.2d 671, 681 [62 P.2d 358, 117 A.L.R. 1], that if the plaintiff is out of possession and seeks by an action to quiet title to recover possession, the action is triable in a court of law. Rita also points out that the statute of limitation applicable thereto is section 318, Code of Civil Procedure (five years). After realleging by reference various allegations set out in the first and second causes of action, Count Three alleges that by virtue thereof "the leasehold interest of Outdoor Amusements, Inc., which was theretofore created . . . was, on or about May 16, 1958, merged into the fee simple interest of the real property described herein belonging" to the parties "and said lease was, thereby, terminated." In Count Two she alleges that Ray has received rents from the subject property and converted the same to his own use. As shown above, there is no record of the testimony received as to the instant count, the allegations

of which were not drafted by present counsel for Rita. Contrary to counsel's seeming suggestion that on their face they point only to an action for ejectment, they may also be construed as seeking cancellation or termination of the subject lease; and in California a suit to have an instrument canceled or adjudged void is akin to a common suit in the old chancery practice and is purely equitable. (41 Cal.Jur.2d, Quieting Title, § 4.) Ejectment is a possessory action; but Rita already had some possessory rights by reason of her undivided interest as a tenant in common, which rights are not disputed. In the present state of the record, therefore, we do not feel warranted in holding that the equitable defense of laches would not apply to Count Three which could, and presumably did, call for the application of principles governing the equity side of the court.

It is next contended that the doctrine of laches could not operate in Ray's favor because of his failure to plead facts constituting such defense. (*Carlson* v. *Lindauer*, 119 Cal. App.2d 292, 309 [259 P.2d 925].) ▆ But it is also the rule, an awareness of which is admitted by appellant, that a court is empowered on its own motion to deny relief where laches is disclosed by the evidence. (*Curbelo* v. *Matson Navigation Co.*, 194 Cal.App.2d 305, 307 [14 Cal.Rptr. 913].) "Whether such is the situation is a question in the first instance for the trial court" (*McMahon* v. *Grimes*, 206 Cal. 526, 540 [275 P. 440]), and "Each case where laches is depended upon must rest upon its own facts." (*Dufour* v. *Weissberger*, 172 Cal. 223, 225 [155 P. 984].) It has also been stated that "an appellate court will not interfere with a trial court's discretion in this respect unless it is obvious that manifest injustice has been done, or unless its conclusions do not find reasonably adequate support in the evidence." (18 Cal.Jur.2d, Equity, § 54.) In the absence of any record of the evidence received, to which fact we must against refer, how can it be determined by this court that the conclusions below are not adequately supported? By the same token, it may not be said that a manifest injustice has been done.

▆ Finally, it is urged that neither laches nor any statute of limitations bars appellant's cause of action for an accounting (Count Five) of the rents, revenues and profits received by Ray's control of Outdoor Amusements, Inc. She demands such accounting by virtue of her cotenant's interest in the land. According to the trial court (which so found), Rita acquired knowledge of Ray's acquisition of a controlling in-

terest in Outdoor Amusements, Inc., considerably more than four years prior to the institution of the present litigation. We must presume that the evidence supports such finding. While the conflicting claims at bar relate to personalty, in *Akley* v. *Bassett*, 68 Cal.App. 270 [228 P. 1057] (referred to as the second *Akley* case) the dispute related to realty; there the court made mention of a prior determination in the first *Akley* case (189 Cal. 625 [209 P. 576]) that "the doctrine of laches is applicable to an action in partition where conflicting claims to the property are involved and an accounting is sought." (P. 296.) We believe that the rule, thus announced, is applicable here; for reasons already stated, of course, we cannot say that her failure to act within the above time period did not constitute laches on Rita's part.

No other points require discussion.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 19, 1965, and appellant's petition for a hearing by the Supreme Court was denied May 26, 1965.